BROWN (HYLTON v.). See Cases Nos. 6,-980–6,983.

BROWN (IASIGI v.). See Cases Nos. 6,-993 and 6,994.

## Case No. 2,014.

### BROWN v. The INDEPENDENCE.

[Crabbe, 54.][1]

District Court, E. D. Pennsylvania. Nov. 25, 1836.

CONSULS—CERTIFICATE—EVIDENCE—SEAMEN—CHASTISEMENT—WAGES—EXTRA WAGES.

1. A consul's certificate is not evidence of acts not official or within his personal knowledge.

2. Such a certificate is evidence to remit a penalty due to the United States.

3. Where a seaman, shipped for a voyage, is so severely chastised, with an improper weapon, because of his insolence, as to be necessarily left behind at a foreign port, he is entitled to his wages to the time of the vessel's arrival at the last port of delivery.

[Cited in Coffin v. Weld, Case No. 2,953.]

4. But not to the benefit of the act of 28th of February, 1803.

[In admiralty. Libel by William Brown against the brig Independence (J. S. Howell, master) for wages. Decree for libellant.]

It appears that libellant shipped as cook on board the brig Independence, at Philadelphia, on the 18th November, 1835, at sixteen dollars per month; that the brig was bound to Liberia, thence to a port in South Amer-

ica, thence to a port in Europe, and thence back to Philadelphia; that the libellant actually sailed in her from Philadelphia to Liberia, from Liberia to Bahia, from Bahia to Falmouth, in England, and from Falmouth to Hamburg; that, while at Hamburg, during the captain's absence from the brig, the libellant used insulting language to the mate, and resisted him by force; that the mate struck him on the head with a log of firewood; that the libellant was so much injured thereby as to be taken on shore and placed in the hospital by the local police authorities; that before the brig sailed from Hamburg the captain wished to have the libellant on board again, but that it was refused by the persons in charge of the hospital; that the brig then sailed without the libellant, and that she arrived at Philadelphia on the 20th October, 1836. The libel was filed on the 11th November, 1836, and libellant claimed as follows:—

| | |
|---|---:|
| Wages from 18th November, 1835, to 20th October, 1836................ | $176 00 |
| Deduct credits (specifically enumerated) ......... ................ | 122 39 |
| Wages due ...................... | 53 61 |
| Add two months' wages under act of 28th February, 1803 (2 Story's Laws, 883 [2 Stat. 203])................. | 32 00 |
| Whole amount claimed.......... | $85 61 |

The respondent claimed to have paid to, or on account of the libellant, $50.48, over and above the amount properly due, and prayed a recovery of this sum.

Mr. Gilpin, for libellant.

Mr. Randall, for respondent.

Mr. Gilpin offered, in evidence, the certificate of the American consul at Hamburg, to prove the transactions at that port. It was objected to on the part of the respondent because there was no proof of the consul's handwriting, and the certificate was to prove facts which the respondent denied. Mr. Gilpin referred to the act of 28th February, 1803 (2 Story's Laws, 883 [2 Stat. 203]); act of 14th April, 1792 (1 Story's Laws, 235 [1 Stat. 255]); Bull. N. P. 225, 229; 1 Stark. Ev. 173; U. S. v. Liddle [Case No. 15,598]; U. S. v. Mitchell [Cases Nos. 15,791 and 15,792].

Mr. Randall was stopped by the court.

HOPKINSON, District Judge. The court do not say that there may not be certain matters in which the official acts of the consul may be proved by his official certificate; but the facts stated in this certificate are not of that character. This is to prove another certificate of the time of Brown's discharge from the hospital; the proceedings of a police court, the sentence of that court, the nature of the wound inflicted on Brown, and the hospital expenses. None of these are official acts of the consul, nor did he know one of them of his own knowledge. Had he sworn to them it would have been hearsay evidence. He certifies to facts and

---

[1] [Reported by William H. Crabbe, Esq.]

proceedings before another tribunal, with which he had nothing to do, and of which he had no knowledge, official or personal. I will admit the certificate so far as to show that the libellant was left at Hamburg, without the consul's knowledge or consent, because that is material, but not to prove the rest that it contains. The certificate meant by the act of congress [2 Stat. 203] is only of use in the cases there mentioned, and also to remit a penalty due to the United States as an admission against their interest.

The evidence was rejected.

HOPKINSON, District Judge, delivered the following opinion in the case:

In this case penalties are claimed on both sides. The libellant counts upon his full wages for the whole voyage, and also upon two months' pay for having been left by the captain in a foreign port. On the other hand, the respondent insists that he is not entitled to his wages home, and that he is chargeable with heavy expenses incurred for him in the hospital at Hamburg.

The libellant had received a severe wound on the head, inflicted by a stick of fire-wood. He had behaved with great and provoking insolence to the mate. I give no opinion as between them. It appears that the police officers of the port, who had seen the affray with the mate, came, of their own accord, on board of the brig. went below, where the libellant was, took him on shore and put him in the hospital. He neither went on shore by his own will and act, nor was he put or left there by the captain. On the contrary, the captain was very desirous to have him and bring him home; but, after waiting, he could not get him, and was obliged to leave him behind. Should the captain, under such circumstances, pay the penalty of two months' wages, allowed to a seaman who is discharged without good cause, in a foreign port? I think he did not discharge him; he was unwilling to leave him.

On the other hand, the seaman was in no default. He did not desert the brig, or abandon his duty. He did not violate his contract, which was for his voyage out and home; he was prevented from performing the contract by a superior force; by the officers and laws of the place where the vessel lay. Why then should he suffer loss, or be deprived of the benefit of his contract? He was unable to do his duty, to perform the service, by no fault on his part. It is like the case of sickness, when the seaman is prevented by the act of God, from performing his part of the contract, he nevertheless has his wages. In the case of Hart v. The Little John [Case No. 6,153], the ship had delivered her cargo at Liverpool. On her return (the voyage was out and home), she was captured by a French cruiser, who kept her for eight days, then recaptured by an English frigate. and restored on the payment of salvage. The libellant was taken on board

the French cruiser, carried to France, and there released. He was allowed his wages for the whole voyage, deducting the proportion of the salvage. The judge says he grounded his opinion on cases like this on those of sailors falling sick, and on those cited by the libellant's counsel. In such cases, it is said, the wages are due, "because the mariner is not in fault," and the "default of the seaman is no more to be imputed to him than if he had fallen sick on the voyage, in which case his wages are due, without deduction." The judge affirms the rule, and says, "it is clear that in case of sickness preventing a performance of duty, if the malady be not occasioned by the mariner's malconduct, that full wages are payable, whatever expense or loss the ship was under on this account," and adds: "I see no reasonable distinction between this case and that." The judge undoubtedly says that his "opinion is founded on the general principle that where a mariner is prevented by force, when he is not in fault, from pursuing his voyage, he is to be paid his full wages," adding that "if during the continuance of the voyage, he earns wages in other service, they shall be deducted from his claim."

In the affray between the mate and the libellant, the latter was in fault by his insolent language and deportment; but the mate was not less so in correcting him with an improper weapon. To strike a man on the head with a log of fire-wood, was to endanger his life, and the injury here was very severe. But, if the libellant was in fault, so as to justify the correction he received, I should not understand that the fault attends on him so as to be extended to the subsequent taking him on shore, without any complaint or application on his part, nor, so far as we know, with his acquiescence or consent. But I give no opinion on this point, as I am not prepared to say that the libellant had, justly or legally, drawn upon himself the kind of chastisement he received.

Decree for the libellant fifty dollars and costs.